JAMES K. PARDEE, respondent, *v.* HUGH T. MURRAY ET AL., appellants.

POSSESSION OF LODE CLAIM.— Possession of the surface of a lode claim is possession of all veins, lodes and ledges whose tops or apexes are within such surface lines, and possession of such surface protects all such veins, lodes and ledges from operation of the statute of limitation.

No adverse possession could become operative by going outside of the surface boundaries and sinking a shaft upon what was claimed as another location, but which the jury found to be the same. Adverse possession that could ripen into a title must be open, notorious and under a claim of right.

The statute of limitations would only begin to run from the time that it became known to the prior locator that the new location was being worked upon the same vein or lode.

PLEADING.— Defendant having denied possession of plaintiff's ground, the court held rightly that no testimony offered by defendant of forcible possession was admissible. Testimony must conform to the allegations of the pleadings.

CROSS-VEINS.— In case of a cross-vein the prior locator is entitled to all the ore or mineral within the space of intersection, but the subsequent locator has the right of way through the space of intersection. If the latter should take the ore from the space of intersection, he would be liable therefor in an action of trespass.

*Appeal from Second District, Deer Lodge County.*

E. W. & J. K. TOOLE, for appellants.

The record in this case discloses the following state of facts: That plaintiff filed his complaint in said cause in the district court, second judicial district, Deer Lodge county, Montana territory, in which he alleges that on or about the 9th day of August, A. D. 1879, he was in the quiet and peaceable possession of the property therein described; that defendants, at said date, entered upon said property, and dug and extracted ore therefrom to his damage in the sum of $20,000, with a " continuendo " covering future damages. There is no allegation of title other than that above mentioned.

In addition to this there is a separate count and a prayer for equitable relief.

Defendants come in and, by answer, deny the possession thus claimed by plaintiff, and set up title, possession and right of possession in themselves, and likewise answer the count in which plaintiff asks equitable relief.

To this answer plaintiff filed his replication.

After the issues were thus framed and a restraining order granted, as prayed for, plaintiff, by leave of the court, filed a supplemental complaint, in which he alleges a subsequently acquired title and nothing more. To this supplemental complaint defendants demurred, which demurrer was overruled, whereupon they filed an answer thereto denying such title, and in proper form set up possession adverse to plaintiff and pleaded the "statute of limitation" in bar of this action. The case went to trial, as appears from the statement on appeal, upon the foregoing issues and pleadings:

1. It will be seen that until the supplemental complaint was filed, the issue tendered was one simply of naked possession. The right of the plaintiff to recover upon the case then made was the issue upon which his recovery, if at all, must be had. That is to say, if, under the *state of facts as they existed at the time of filing the supplemental complaint*, plaintiff could not recover, he cannot bring to his aid a title afterwards acquired by a supplemental complaint, and thereby import into his original action an element without which he could not otherwise recover. See *Hugeman* v. *McCunniff*, 2 Col. 367 *et seq.;* Sedgwick on Measure of Damages, 143.

2. Hence the all-important inquiry is, how stood the case with respect to the right of the parties prior to the acquisition of the title set up by the supplemental complaint? In this view of the law, the question of the possession of the property, out of which the alleged damage to the freehold occurred, is of the utmost significance, as plaintiff could not by his "patent" title afterward acquired expand or extend his possession so as to give rise to a cause of action which did not exist when

the suit was instituted. The court erred in not letting
defendants show that they were in the actual occupancy
and possession of a part of the property in question. See
Record; Cooley on Torts, p. 322, and case cited; Chitty
on Pleadings, 202–3; *Uttendorffer* v. *Saegers*, 50 Cal. 496;
*Gardner* v. *Hast*, 1 N. Y. 528.

3. The same principles equally apply to the instructions
offered by plaintiff, given by the court, and to which ob-
jections and exceptions were duly taken by defendants.
See Instruction No. 5, Record, p. 000; *Reperts* v. *Fiori*,
50 California, 363; *Lamb* v. *Burbank*, 1 Sawyer, 232;
*Campbell* v. *Rankin*, 0 Otto, p. 99.

4. The defendants' plea of the "statute of limitation"
in bar of the plaintiff's action was full and complete.
The plaintiff's right of action in ejectment accrued as
well before as after patent. The law itself recognizes the
"statute of limitation" of the territories, which confers
a title upon an adverse possessor within one year after the
statute is set in motion. See U. S. R. S. p. 430, sec. 2322.
It certainly could not be successfully contended that if
plaintiff's title was extinguished by defendants' adverse
possession, this right to recover damages thereafter did
not thereupon also cease.

5. The defendants, then, had a right to show their loca-
tion and possession of the property in question: 1. For
the purpose of showing that they entered not as naked
trespassers, but in good faith, under color of title. 2. To
show the extent and character of their possession. 3.
That it was such as set the "statute of limitation" of
the territory in motion. 4. That by reason of this
they had acquired a title by adverse possession, and
thereby defeated the plaintiff's action. See Record, from
p. 118 to p. 131, inclusive; Codified Statutes, pp. 591–2,
secs. 2–4; 420 *Manufacturing Co.* v. *Bullion Manufactur-
ing Co.* 9 Nev. 240; *Davis* v. *Clark*, 2 Mont. 394; 2
Black (U. S.), 394; *Leffingwell* v. *Warren*, 2 Black (U.
S.), 599; *Clarke et al.* v. *Courtney et al.* 5 Pet. (U. S.)

366, 509; *Golden Fleece Manuf'g Co.* v. *Cable Con. Co.* 12 Nev. 321.

It will be seen from these bills of exceptions that defendants were seeking to show their title and right of possession to the property in question, whether it be the same or a different ledge; and that the exclusion of this title, thus offered, left them irredeemably naked trespassers. Certainly they should have been permitted to have shown these facts, as affecting plaintiff's right to recover damages. If it formed a link in the chain of title, it should have been admitted. Otherwise the court puts the defendants in the attitude of naked trespassers, and leaves nothing for the jury to pass upon save the one single question of damages. The denials put distinctly in issue the possession of plaintiff, and the affirmative matter cannot dispense with his proof upon the issue joined by the denials. See Pomeroy's Rem. and Rem. Rights, secs. 721–2; Copp's U. S. Mining Law.

Besides this, it absolutely concedes the title to be in plaintiff; refuses defendants the right to controvert it under the denials in the answers; and authorizes a recovery of damages, notwithstanding the defendants, at the time of the alleged trespass, may have been in possession under claim and color of title, and continued so up to the time of the commencement of the action. We contend that, even when title is shown in plaintiff at the time he sues, which is not the case here, either by averment or proof, he must be in the actual possession of all the property. Otherwise the acquisition of title to part of the premises by adverse possession may be acquired. He must, therefore, regain possession, in some way, of the property adversely held before he can sue for damages to the freehold. He cannot recover when defendants are in possession adversely under claim and color of title. See Record, pp. 129 to 131, inclusive.

It will be seen, from the bills of exception contained in the record, that defendants sought to show that, prior

to the purchase of the property in controversy, or that portion thereof claimed by defendants, their adverse possession and claim was not by reason of underground entrances, but by a winze and shaft from the surface, inside of this surface-claim, which was sunk down and upon the vein, and that this constituted the trespass complained of. This, we claim, was error. *Hugeman* v. *McCunniff*, 2 Col. 367 *et seq.*

Admitting this to be a cross-vein or strata of quartz or ore, and that defendants were in possession of the surface and vein beneath at the crossing or intersection, and at such point of intersection plaintiff was entitled to the quartz or ore when it crossed this vein or intersected it, would not defendants' surface location and possession give them possession of all beneath in the vein claimed by them, upon the same principle that it gives plaintiff a possession?

Would it not give them a title by adverse possession as to such portion of plaintiff's vein as they had actually located on the surface and held and worked from 1875 to 1879, when the injunction was granted, even though it cut through plaintiff's vein? But above all, it is no trespass to work this vein so claimed by defendant through and across plaintiff's vein. He would only in such case be entitled to the quartz, and such is not the action he has brought. See R. S. U. S. sec. 000.

Certainly, plaintiff to recover must show his title, and in order to do this must show there was no cross-vein in order to recover in trespass. This he failed to do; and having failed in this, he cannot recover in this action under the section of the United States statutes referred to. See fourth special issue submitted, Record, pp. 403, 404.

As to the sixth finding of the jury, defendants were not permitted to show their location, actual occupancy and possession of the particular portion of the property claimed by them. They offered the same character of

evidence, aside from the patent (which we have shown cannot create a cause of action that did not actually exist at the time of the commencement of this suit), that was admitted on the part of the plaintiff. It was excluded, and there was consequently nothing upon which the jury could base this finding in favor of the defendants. The court might, probably, upon the rendition of a final decree as affecting the prayer for a final injunction, entertain the evidence of a title disclosed by the patent and set up by supplemental complaint; but as to the action at law, the plaintiff must stand or fall upon the facts as they existed at the time his suit was brought; and the title and possession by defendants should have gone to the jury under instructions from the court.

As matter bearing upon both of those issues, defendants should have been permitted to show that the general strike or course of all the veins in that vicinity was in the direction of the vein claimed by defendants. It was some evidence tending to show the actual existence of defendants' vein, and tended to show the general formation of the country there and in that vicinity.

There was error in excluding this evidence. Especially was it so, after Foote had testified to his knowledge of the formation of the country in that vicinity, and defendants, to test his knowledge and show what such formation was, sought to interrogate him upon the subject. See Record, pp. 59, 208. He had also testified to having surveyed and explored the "Salmon" lode, the "Cliff Extension," "Shark Town" and "Scratch-All" lodes. See Record, p. 198. Had testified as to the strike of the "Estell" and other ledges. See Record, p. 209.

In support of the possession of the defendants since 1875 to the commencement of the action, as applicable to the fourth special issue submitted to the jury, defendants sought to establish an actual possession of surface and underground portion of this claim, by Durfee, and the

court refused to admit the testimony for this purpose. See Record, p. 102.

This certainly was error. The court seemed to have proceeded upon the basis that, if plaintiff was the owner of the property by prior right, then there could be no actual and adverse possession of the property in another. The very nature of an adverse possession presumes title and possession in the owner; "ouster" and occupancy under claim and color of title in another. Without this there could be no adverse possession under the "statute of limitation."

The question of adverse possession is a question of fact for the jury, and the court should have permitted any and all the evidence tending to show such fact to have gone to the jury, and covered the legal questions applicable to them by instructions. See *Shuffleton* v. *Nelson,* 2 Sawyer, 540.

So an action for damages involves solely a question of injury to the possession, and possession was the gist of the action. Cooley on Torts, 332, 322.

Defendants sought to show that they were in possession of the veins or lodes known as the "Scratch-All" and "Shark Town," and that they went down and upon the same from the surface inside of their surface ground, and worked it from 1875 to the granting of the injunction, under color of title and claim of right. The court should have permitted this to be shown in order to support the plea of adverse possession at the time of the alleged trespass, as well as the plea of the "statute of limitation." The case of *King* v. *The N. M. & Ex. Co.,* decided at this term of court, is in point. Morrison's Mining Digest, p. 5, sec. 1; *Eige* v. *Medler,* 82 Pa. St. 86.

But here, even a surface claim defined and worked continuous therefrom, on and upon the ore, was sought to be shown. *Armstrong* v. *Caldwell,* 53 Pa. St. 284.

The complaint sworn to by plaintiff, in which he alleges possession in defendants, and the declaration of

plaintiff's predecessors as to where the boundaries between their claims were, was certainly competent, and would have been of great weight. Civil Practice Act, 601, 603, 624; 3 Wash. on Real Prop. (4th ed.) 118-120.

We shall not endeavor to answer all the propositions presented by counsel for respondents in the short time within which a reply is required, but shall content ourselves by answering such portions thereof as we conceive touch the most vital questions involved in the case. We do not desire, however, to be understood as waiving any of the errors assigned in the record, but we now here, and shall in the argument of the cause, insist upon the same.

1. Respondent does not state the issues involved in the case as we understand them. It will be conceded, we assume, that the defendant may set up any and all defenses he may have under our system of practice. And if, upon the trial, he establish all or any one of them, he is entitled to recover. We therefore submit that, upon the inspection of the record, it will be found that the following *issues* and *questions* arising upon the same are fairly presented for the determination of this court:

1. First, that the issues tendered by the respondent in his complaint on the 23d day of August, 1879, were solely on account of his actual possession of the property in question at the time of the alleged trespass, and that the possession of plaintiff was denied in the answer.

This, then, presents the first issue, the materiality and effect of which will be discussed in its order.

2. That appellants are the owners of the "Shark Town" and "Scratch-All" lodes, and sought by competent evidence to identify the *locus in quo* of the same; which is, in effect, tantamount to a denial of title in anybody else as to these particular pieces of property.

This presents the second issue and question involved under it.

3. That, in addition to the denial of respondent's title,

as alleged (*i. e.*, possession), to any of the property claimed by him, and the assertion of title of appellants to the "Scratch-All" and "Shark Town" lodes, they allege that the "Scratch-All," owned by respondents, lies east and adjoining the "Salmon" lode. This, we contend, then, is an allegation of ownership of the property by appellants up to the "western" boundary of the "Scratch-All," and a limitation of the eastern boundary of the "Salmon" at this point. Upon this proposition appellants sought to establish the boundary of the "Scratch-All" and their title thereto.

This presents the third issue and questions presented under it.

4. Appellants, under like claim of title to the "Shark Town" lode, and the allegation that it was a cross lode and intersected and crossed the "Salmon" and "Cliff Extension" lodes, sought to show that they were the owners thereof, and had been in possession of and working the same from 1875 up to the appointment of a receiver in 1879.

This is the fourth issue and question presented under it.

5. Appellants sought to show, under this allegation of ownership of the "Scratch-All" and "Shark Town" lodes, that they were in the actual adverse possession and occupancy thereof since 1875; the location of the property, marking its boundaries, recordation of the same, and actual possession and working of the same on the surface and underground, as shown by bill of exceptions, in record, pp. 120 to 128, inclusive. To which the attention of the court is directed, as the fifth issue and question to be determined.

6. That the same question is also presented by rejection of similar evidence to support the allegations of adverse possession of appellants since 1875, as will be seen from bill of exceptions, record, pp. 129 to 131, inclusive.

7. That, for the purpose of showing adverse possession

of the "Scratch-All" and "Shark Town" lodes, and identifying the *locus* of the same, under their allegation of title and adverse occupancy, and to defeat a recovery of plaintiff in this kind of an action, appellants offered to prove: 1. The location of and marking out of said property upon the surface. 2. The recordation of the same. 3. The actual occupancy and work thereon upon the vein and quartz upon which the alleged trespass occurred by shafts connecting the same from the surface, so as to defeat this kind of an action; which was not permitted by the court, as will be seen by bill of exceptions, record, pp. 116 to 117, inclusive, and from 117 to and inclusive of 131.

8. For the purpose of showing the *locus* of the eastern boundaries of the "Salmon" and "Cliff Extension" lodes and the *locus in quo* of the "Scratch-All" and "Shark Town" lodes, appellants sought to establish by a competent witness, the predecessor in interest of the respondent, while in possession thereof, the extent of their claim, as provided by section 603 of the Code of Civil Procedure, which was refused by the court, as will appear by bill of exceptions, record, pp. 118 and 119.

These, we say, present the principal questions involving the admission or rejection of evidence, under the issues made, and necessarily growing out of the allegation of the answer of appellants.

If we can show that there was error in them, or any of them, that was material in the defense, all of the other propositions discussed by counsel for respondent are immaterial, and this case should be reversed.

The conclusion is irresistible from the record, heretofore cited, that the court ignored every question in the case involving the title of appellant; made him thereby a naked trespasser, and limited the inquiry to the sole question of damages; unless it can indeed be said that the question of boundary of the respective claims was allowed to be only partially presented by the appellant,

by reason of the rejection of the declarations of Estell, the predecessor in interest of respondent.

If, however, the complaining party was not allowed the full benefit of all his legitimate evidence upon the question of these boundaries, it is, to all intents and purposes, likewise eliminated from the case.

We earnestly request the court's attention to the proposition that by the exclusion of the location, record, evidence of the *locus in quo*, possession, occupancy and work of appellants upon the property upon which the alleged trespass was committed, it virtually says that the only issue is the boundaries of the claims of the respective parties and the damages incident to the trespass.

That is to say, that, because appellant, among the other issues and defenses he has made, has sought also to present the question as to the boundaries of the lodes in question, he is thereby limited to the latter issue alone; and on that account he loses the benefit of his allegations of title, adverse possession and occupancy of the property in dispute from 1875 to the time of the institution of this action. The exceptions, from p. 57 to 131, contained in the record, show this to be the fact. Hence, if the exclusion of the evidence of Estell, referred to upon the question of boundaries, was error, there is and was nothing left for the jury except the single question of damages. The evidence to support the issues, submitted on the part of the defense, was eliminated from the case, and the findings of the jury were based upon *ex parte* testimony.

We shall confine ourselves to the bills of exception contained in the first *part* or *section* of the record in this case, without reference to the voluminous matter unnecessarily incorporated in the balance of the transcript; and invite the attention of the court to the following points and authorities, under the respective headings of this brief, in their regular order:

Upon the first proposition presented, we respectfully submit: That the only allegation of title made by the re-

spondent is such as follows from actual possession of the property in dispute.

Dispense with this allegation and the issues made under it, and there is nothing left except the simple claim of damages, without any averment of title whatsoever. There is no allegation of ownership, by reason of which a constructive possession and right of possession attaches on account of such an averment. Nor can the plaintiff base his action upon the naked averment of actual possession, and support it by proof of a legal title and the constructive possession that follows from it. While actual possession is *prima facie* evidence of title, such an allegation in the pleading is not an averment of actual title and constructive possession. Nor can such presumption be fairly indulged from an allegation of this kind. If his proof fails to establish an actual possession, he cannot hypothecate his case upon actual title and constructive possession and recover. There is quite a difference between *evidence* of possession in support of an *allegation* of title, and an allegation of possession alone and evidence of title to support it. In the latter case, evidence of title carries with it only *constructive possession* as *contradistinguished* from *actual possession*. But it is claimed by counsel that the real title was in Holland and Estell, and that he went in under them.

This still assumes that respondent occupied under the paramount owner; but the question of his occupancy is still put in issue. If he had only authority or right of entry under Holland and Estell, this does not give him a constructive possession, as this follows only the legal title. It gives him only a *right of* possession, while the action is for damages *to* the possession. He has a right to recover the possession, but not a right to damages arising from the trespass upon the property while out of his possession. We assert these propositions as correct: 1. That the owner of real estate, who is deemed to be in the constructive possession of the same, cannot maintain

an action for the damage done by the trespass complained of while the same is in the actual possession of the trespasser under color of title.  2. That our statute has made no innovation upon this doctrine, except in so far as it permits the real owners or persons entitled to the possession to unite this kind of an action with an action to recover the possession.  See *Rowland* v. *Rowland*, 8 Ohio, 40 *et seq.*

These principles are too elementary in their character and too firmly and universally established to require other authority or argument in support of them.

Appellants may show as many titles as they have, and, if all fail, can rely upon their actual adverse possession. *Mackey* v. *Reynolds*, 2 Bay, 475 and 429; *McClain* v. *Todd*, 5 J. J. Marsh. (Ky.) 335; *Webb* v. *Stutevant*, 2 Ill. (1 Scam.) 181; *Davis* v. *White*, 27 Vt. 571.   And especially *Cook* v. *Foster*, 7 Ill. 652; *Davis* v. *Wood*, 14 Mo. 71; *Gardner* v. *Heart*, 1 N. Y. 528.

It was sought, by the evidence offered, to show that there was no original trespass against respondent's possession; that appellants had acquired an adverse possession under color of title since the title of Holland set in, before respondent's purchase and the commencement of the action.  In other words, an intervening right of adverse enjoyment. *Tipping* v. *Gallop*, 8 Iowa, 74; *Warner* v. *Cochoran*, 30 N. H. 379; *Gardner* v. *Heart*, 2 Barb. 165; *Buckley* v. *Dalbare*, 7 Conn. 233; 20 id. 30; *Shields* v. *Henderson*, 1 Litt. (Ky.) 239; *Abbott* v. *Abbott*, 51 Me. 575; *King* v. *Baker*, 25 Pa. St. 186.

Nor can it make any difference that appellants' record called for another piece of ground, or that he was mistaken in the same, if the *locus in quo* was actually occupied and claimed by appellants.   *Cochoran* v. *Whitesides*, 34 Mo. 417; *Crary* v. *Goodman*, 22 N. Y. 170, and authorities there cited.

If, then, this be true, all the attempts of counsel to bring to the aid of his allegations of actual possession the

title of his predecessors is utterly unavailing. He must stand or fall, as a matter of law, upon his actual possession.

The title or right of possession invoked to his support will not afford the required relief.

The issue of possession, whether tendered on account of title or not, must be sustained. If the property is in the actual possession of another, claiming it under color of title, neither the owner nor the party entitled to the possession can maintain this action until he regains possession, unless, forsooth, under the statute, he unites it with an action for the possession. The presumption of actual possession in the true owner no longer obtains when the property is shown to be in the adverse possession of another. And when this condition of affairs is shown, his right to this kind of an action against the possessor does not exist. If the possessor claimed, occupied and worked it as his property, that he asserted it to be a different lode from the "Salmon" lode, can be of no consequence. The real question is, was he in the adverse possession of the *locus in quo erat?* If so, he was entitled to prove it and defeat the action. Actual possession, under such claims, is the test of the validity of his defense.

It will also be observed that appellants sought to show actual possession of the property claimed by them, especially that portion upon which the alleged trespass was committed, by winze and shaft from the surface, perpendicularly down upon this lode, and by tunnels upon the same, connecting with their surface-works, long prior to and at the time respondent acquired any right to this property whatever, if he has any at all.

This presents, under this question, the simple proposition, can a person acquire actual possession of a lode by shafts from the surface and underground works thereon to the extent of such shaft and works? This principle is too clearly determined in the affirmative by the au-

thorities cited by appellants in their original brief in this case to admit of doubt; and is too deeply founded in reason and principle to be overturned. It was emphatically actual possession of the *locus in quo,* which was incapable of being held by adverse claimants at the same time. Should additional authorities than those cited be required to support so plain a proposition, we cite: Washburn on Real Property (4th ed.), p. 125; also p. 128.

Then, if actual possession and occupancy of the property upon which the alleged trespass was committed would defeat a recovery in this kind of an action, and the facts sought to be proven established, or tended to establish, such possession, there was manifest error, and consequently injury in the refusal of the court to allow such proof.

At common law a sale of that portion of the property by Estell and Holland to respondent would not give him a remedy, even in ejectment. It is only by statute that he could recover in that kind of an action. See 1 Wharton on Real Property (4th ed.), pp. 62–3; id. p. 329; 1 Doug. (Mich.), 19, 38, 546, 566.

We confidently assert that the refusal of the court to allow appellants to show their actual possession of the property, at the time of the alleged trespass and the beginning of this action, was a fatal error in the trial of this case, and for which account it should be reversed. It was an issue fairly tendered, and was material in the determination of the merits of the controversy.

Upon the question presented under the second subdivision of this brief, it is contended by counsel for respondent that the statute of limitation was not sufficiently pleaded to let in the proof offered. Also, that the *general allegation* of *ownership* by appellants, and the denial of the title of the respondents, were insufficient for that purpose.

We might here say that the question is of but little consequence, if we are correct upon the first proposition

herein discussed, as it involves directly the right of the plaintiff to recover in this character of action, regardless of any title acquired under the "statute of limitation" by adverse possession, if, indeed, it can be said to be an allegation of title at all. It is a well settled principle of practice and pleading, that, upon a denial of title in plaintiff, defendant may show any title that is available in himself that will defeat a recovery. That, like a plaintiff who avers title in himself, he may show any and all title he may have, whether acquired by adverse possession or otherwise.

1. Was the evidence of title by adverse possession admissible under the denial of title in respondent and averment of ownership by appellants? Upon this point we refer the court to *Keyes* v. *Cannon*, 29 Ohio St. 359; *Gillespie* v. *Jones*, 47 Cal. 259. We might cite other authorities upon this point, but, as we take it, none can be found to the contrary when the question legitimately involves one of title.

2d. Did the evidence offered tend to establish such a title in appellants and to disprove title in respondent? If it did, there was error to their injury in its rejection by the court, and the case should be reversed on that account.

Was the evidence offered pertinent, and did it tend to establish adverse possession in the appellants? As shown by the record they sought to show the following facts: That, in 1875, they located the property in controversy; that they marked out the surface boundaries so as that they could be readily traced; that they made a record of it; that they commenced work upon the surface in 1875, and continuously worked upon the same up to the time of the commencement of this action; that prior to the acquisition of any interest of respondent in the same, they had sunk a shaft and winze from the surface to the levels beneath, and connected the same therewith; that the predecessors of respondent knew that they claimed

the property upon which this work was done as their own; that this constituted the trespass complained of, and that they were in the actual possession thereof from 1875 to the commencement of this action; and that they had expended in money and labor thereon about eighteen thousand dollars ($18,000), while the "Salmon" and "Cliff" lodes belonged to the predecessors in interest of respondents, and about seventeen thousand dollars ($17,000) since respondent acquired whatever interest he has in the same; and that they were never, at any time, disturbed in the possession thereof until a receiver was appointed in the court below.

Each and all of these facts, separately and collectively, were sought to be established. But the court refused to admit any of them, as will be seen from exceptions contained in the record, from page 107 to 131, inclusive.

We were, at the trial, and still are, utterly unable to see upon what basis this evidence was excluded. If the appellants should have been held to establish a title in connection with their possession notwithstanding their title under the "statute of limitation," we could readily see how evidence of adverse possession would be inadmissible. But when it is clearly shown that, under the issues, such possession gives title or right of possession, even against the true owner, when held for the statutory period, the reasons for its admission are too patent to admit of controversy.

Even if the title to the property so possessed was vested in the predecessors in interest of the respondent in 1875, this is the very fact that sets the statute of limitation in motion, and enables the occupant thus to acquire a right of possession to it. If he had a title or right of possession, aside from this, it would be useless to assert his claim under adverse possession. As it is, he can certainly rely upon either or both. This question of actual possession, under all the circumstances of the case, was a question of fact for the jury, under proper instructions

from the court. It is not like a case where a given state of facts is uncontroverted; here the appellants sought to establish the facts constituting an adverse possession. See *Shuffleton* v. *Nelson*, 2 Sawyer, 540 *et seq.; English* v. *Johnson*, 17 Cal. 107; Washburn on Real Prop. (4th ed.) vol. 3, pp. 21, 38, 140–41; id. pp. 124, 125.

Nor can it make any difference in whom, or in what manner, the legal title is held. Adverse possession for the statutory period constitutes a complete bar and vests the right of possession in the adverse occupant. See Washburn on Real Prop. (4th ed.) vol. 3, p. 134; 2 Black (U. S.), 605 *et seq.;* 43 Cal. pp. 65, 67; id. pp. 251, 252.

With respect to this kind of property, respondent and his predecessor had their action to recover possession, and the statute of limitations of the territory ran as well before as after the issuance of the patent. See 420 *Mining Company* v. *Bullion Mining Company*, 4 Sawyer, 634 *et seq.; Sears* v. *Taylor*, 4 Col. 38; Copp's U. S. Mineral Lands, p. 363 *et seq.*

Hence, if the party entitled to bring his action, or his successor in interest, fails to do so within the statutory period, and afterwards gets a patent, he obtains nothing but the naked legal title, leaving the adverse occupant with the beneficial estate, which he can assert in any form of action necessary for its protection. See *Arrington* v. *Liscom*, 34 Cal. 381; *Crockett* v. *Lashbrook*, 17 Am. Dec. p. 98; Codified Statutes, p. 511, sec. 284; *Davis* v. *Clarke*, 2 Mont. 394 *et seq.; Cameron* v. *Stockton*, 36 Cal. 593.

The *status* of the parties' rights with respect to this property were fixed, under the statute of limitations, at the time of its repeal on the 4th day of August, 1877, under the evidence offered.

The remedy was extinct and could not be revived.

A vested right had accrued which could not be defeated or disposed of, except in some of the modes provided by law. Appellants offered to prove their adverse possession

from June, 1875, to the 23d of August, 1879, which was
an effectual bar under all the different statutes applicable.

Upon the third and fourth propositions presented,
counsel for respondents seem to assume that, under one
of their defenses, which alleges that the Salmon lode
proper lies west of appellants' lodes, the only question
raised is, at what point is the eastern boundary of the
Salmon? In other words, that, in a contest with refer-
ence to actual possession, which is the claim of appellants,
respondent may *float the actual* possession in an easterly
or westerly direction, wherever he pleases; or where, in
fact, the boundary would be, and there dispense with
appellants' claim and possession. It is clear that appel-
lants relied upon this possession and the boundaries of
their claim as limiting the boundaries of the Salmon,
and did not intend to surrender it, instead of intending
the Salmon to swallow up their claim and possession. It
would be a fraud upon appellants to so interpret the
pleadings.

Appellants sought to fix this possession and claim in
order to show what is meant by the boundary of the
"Salmon" on the east. They claim the property they
were in possession of, and if it covers a part of the "Sal-
mon" proper, it is equivalent to an assertion that any
title respondents may have to it is bounded by the west-
ern boundary of their claim. They claim in their answer
the precise piece of property which they were in posses-
sion of. This possession is the very essence of their
claim, and upon it depends respondent's right to recover.
If he cannot recover while appellants are in possession,
claiming title, he cannot by mere fiction assume that they
are in possession of a different piece of property, and
thereby dispense with the consequences flowing from
such actual possession of the *locus in quo*. This would
utterly dispense with actual possession, defeat the run-
ning of the "statute" by reason of it, require a party to
stand upon a strict legal title, and force him to surrender

the benefit of his actual possession, even though he had
acquired a title thereby.   The rule is, that, if a party,
even through mistake of his boundary lines, or calls of
his deed, enter upon the land of his neighbor and occupy
it adversely for the statutory period, he acquires a right
to possess it.

Hence the whole question is, did appellants occupy the
ground, upon which the trespass was alleged to have been
committed, under a claim of title?   See *Haley* v. *Wheeler*,
8 Hun, 569; *Grimm* v. *Curly*, 43 Cal. 252.

Whatever bars an action in trespass may be given in
evidence under the general issue; and it can make no
difference that several defenses are pleaded.   See *Lang-
ford* v. *Ausley*, 4 Am. Dec. p. 699.

The appellants sought to show that their original entry,
if it was a trespass at all, was while the predecessors in
interest of respondent were in possession as such, and
that this was the only entry.   The doctrine in such case
is well settled, that, as against the true owner or actual
occupant under him, neither can have a remedy, except
for the first entry; and that he must regain his possession
in some way before he can maintain an action of this
kind.   See *Zell* v. *Reau*, 31 Penn. 304; *Dimalt* v. *Hage-
man*, 8 Cowan, 22 (18 Am. Dec. p. 443); 2 Roll. Abr.
"Trespass," p. 5; 4 Cowan, 388, and case there cited (8
Wheat. 75, p. 80).

It would seem too plain to require additional argument
or authority, that the refusal of the court to permit appel-
lants to show that they were in the actual possession of
a portion of the property at the time respondent acquired
his interest and made his entry was error.   It is a settled
principle, that in such cases, whether he have the perfect
legal title or only the right of entry at the time, he ac-
quires possession of such portions only of the property as
are not in the actual adverse possession of another at the
time of such entry.   See *Ayres* v. *Bensley*, 32 Cal. 620.

The most that could be said in the case at bar is, that

if appellants and respondent were each in the actual pos-
session of a part of the "Salmon" lode, as contended by
counsel, the one having the legal title would hold the
constructive possession. That is to say, that portion of
the appellants' claim, not in his actual possession, for the
purpose of this action, would yield to the superior title of
respondent, if they had any, and *e converso.* See *Semple*
v. *Cook,* 5 Cal. 26.

The question in this case involves necessarily the fact
of actual possession. *Constructive* possession is of no
avail in *trespass quare clausum fregit* if the property is
at the time in the *actual adverse possession* of another.

If this be true, the whole of respondent's theory is
overturned. The question of actual possession was the
gist of the action; and the ruling of the court in not per-
mitting it to be shown in contradistinction to the legal
title was an error fatal to the trial.

We contend that it is wholly immaterial what inherent
defects or infirmity there may be in the calls or the de-
scription of the property upon which the entry is made,
in so far as it can affect the portion thereof which is
reduced to actual possession.

As evidence tending to show that the "Scratch-All"
was a cross-vein, appellants sought to prove the forma-
tion of the country, the strike or course of the different
lodes in the vicinity, and that the formation of the coun-
try rock was similar to the so-called vein claimed by re-
spondent, and ran in the same direction with it. This
they were not permitted to do. See Record, pp. 104–5.

Upon the question submitted to the jury, as to whether
there was a cross-vein, they were unable to make a
finding.

If the evidence was competent, the influence it may
have had upon the verdict of the jury will not be consid-
ered by the court. If it devolved upon appellants to
show this fact, as contended for by counsel for respond-
ent, then there was manifestly error in the rejection of

the evidence. If, on the contrary (as we claim), it de-
volved upon the respondent to show that there was no
cross-vein, as affecting his right of recovery in this case,
then a failure to find on this point would defeat this action.

It devolves upon him to show that he has a right to re-
cover; that the work in cutting through his lode was a
trespass. If it were a cross-vein, as appellants claim,
they had a right to work it through the claim of respond-
ent, and his remedy pertains to the recovery of the ore,
and not to the trespass upon his possession in taking it
out; and such was the effect of the instructions. He
must show every fact necessary for a recovery, and, in
so doing, it devolved upon him to establish to the satis-
faction of the jury that there was no cross-vein where
appellants took out the quartz in question. This he failed
to do, and in this he failed to show any trespass. It is
not requiring him to show a negative except by establish-
ing his right affirmatively.

Besides, the extent of the "Salmon" mine on the east
had been fully gone into by the respondent, in order to
show the trespass, and the extent of the trespass, alleged
to have been committed thereon by appellants. It was
directly in issue, and the evidence of Murray, as to the
declarations of Holland and Estell upon this point, was
of the utmost importance to appellants. By its exclu-
sion a part of the evidence — the declaration of respond-
ent's grantors while in possession as to the boundary
line — was not presented to the jury. It also tended to
show that the work done by appellants was with the
knowledge and consent of Holland and Estell, and conse-
quently no trespass, as pleaded in the answer. See Rec-
ord, p. 112.

But above and beyond all, as to the errors in the rejec-
tion of evidence upon the question of the existence of a
cross-vein, we invite the attention of the court to the
evidence offered by appellants, as found on page 101 of
Record. Int. 21, p. 112; 23, 24, p. 65; 15, p. 65.

Here Durfee, one of the appellants, after showing his knowledge of quartz lodes, and especially those in the district of country in which the property in question was situated, was not allowed to testify to facts showing that there was a "Scratch-All" lode, and that it crossed what is called the "Salmon." We submit that in this there was gross error.

The respondent, having testified as to the existence of the "Salmon" lode and non-existence of the "Scratch-All" lode, was asked whether or not, in his purchase of the "Salmon" lode of Estell and Holland, he recognized the title of appellants to the "Scratch-All" lode. This would, by the declaration and admission of a party in interest, have tended to show the existence of the lode.

We might refer the court to many other particulars wherein competent evidence of the existence of the "Scratch-All" and "Shark Town" lodes were excluded by the court were it not for the prolixity it would necessarily occasion.

What we have said with reference to the importance and admissibility of the testimony tending to show an adverse possession of the property upon which it was alleged the trespass was committed, under the third and fourth subdivisions of this brief, is especially applicable under subdivisions five, six and seven, when taken in connection with the allegations of *adverse possession* set up in the *answers* of appellants. See Record, pp. 10, 11.

Then an actual adverse possession by appellants of the identical property they were working at the time this action was brought is alleged to have commenced in the month of February, A. D. 1875.

We do not think it necessary to further discuss this proposition, and shall rest contented with a brief reference to the principal point made by counsel in their written argument, which we will consider in connection with the eighth subdivision.

It is claimed that the entry of the appellants as against Holland and Estell was clandestine, and that they had neither the knowledge nor the means of knowledge of the *locus in quo* upon which appellants were at work. In answer to this, it will be seen by bill of exceptions, on record, pp. 111–12, and the allegation of the answer, pp. 11 and 12, that appellants averred and sought to show that Holland and Estell had actual knowledge of the claim and works of appellants. The respondent's counsel, in this respect, place themselves in the untenable attitude of objecting to the admission of the evidence tending to show these facts, and, after its exclusion at their instance, complaining of appellants for not making the necessary proof. The rule in such cases, we take it, would at least require that the complaining party should admit the facts sought to be established. We do not deem it necessary to cite authorities upon the admissibility of this evidence when a statute so unequivocal in its terms has declared it competent.

But it is contended that the evidence of Holland and Estell was offered under section 603 of the Civil Practice Act, and was properly excluded by the court for the reason that the party offering it declined to further state the purpose for which it was sought to be introduced. The section referred to provides: "When, however, one derives title to real property from another, the *declaration*, acts or *omissions* of the latter, while holding the title, in relation to the property, is evidence against the former."

Counsel states to the court that this evidence was offered for all legitimate purposes under the issues joined and the section of the statute above quoted. We think it too clear to admit of argument or to require the citation of authority, that, if this evidence was admissible upon any branch of the case, it should have gone to the jury, and its bearing have been limited by instruction, if any limitations were necessary. There was an issue of

title and adverse possession directly tendered, under either of which, aside from the statute, it was competent.

We confidently submit that the record, from pages 5 to 131, inclusive, is replete with errors, as disclosed by the bills of exception of appellants; that manifest injury resulted from them, and that the case should be reversed.

Having considered the question of the admissibility of the evidence offered as fully as a due regard for the length of this argument would at all admit of, we shall now briefly recur to some of the other points made by counsel for respondent.

It is contended that the respondent was in possession of the ground at the surface, and that the jury so found. Counsel seems to overlook the fact disclosed by the record that appellants sought to show their location of the "Shark Town" across the "Salmon" at or nearly at a right angle; and that they were in possession of the surface ground and had sunk a shaft and winze perpendicularly upon their tunnel and levels beneath. The first effort in the defense was to show a staking off of this location of the surface in the manner prescribed by law. It might well have been expected, that, if the adverse occupancy of this property by defendants were excluded from the jury, under the instructions of the court, they would have found *actual* possession in the respondent, which would otherwise have been merely constructive, if it were found he had any at all. We have heretofore called the court's attention to the record showing the exclusion of the evidence upon this point, and shall not again refer to it.

But in anticipation of the error of the court in not permitting appellants to show title by adverse possession, under the statute of the territory, it is claimed that no such right can be acquired, as that would interfere with the primary disposal of the soil, which is exclusively within the province of the congress of the United States.

This position cannot successfully be maintained. In

agricultural entries the statute does not begin to run before the emanation of the patent. But no one would claim that it is not effectual as a bar *ex post facto* to the patent.

The patent, it is true, under the doctrine of "relation," confers upon the patentee whatever title he acquired by the grant, in the first instance, under his location. Yet in the meantime he may have parted with this right by deed, or lost it by adverse possession of another. In such case the patent is but the empty evidence of a once perfect title, the efficacy of which is lost by the investiture of the beneficial estate in another.

Respondent could not enter the land in 1873, permit it to be held adversely by another during the statutory period of limitation, refuse to pursue his remedy to recover possession of the property, and thereafter make his patent available for such purpose.

After he has lost his right of possession in some of the modes known to the law, by neglecting to avail himself of his grant and remedy afforded him on account of it, he cannot call to his relief the patent which issues after the right it confers by relation had become extinct. It will afford him no support.

The government has given him a right and a remedy, which is all that it has assumed to do. The authorities we have cited show conclusively that the "statutes of limitation" may be set in motion and are an effectual bar, as well before as after patent, when applied to this particular class of property.

In this connection counsel has also much to say about the "Salmon" lode, or vein, and speaks of it as a fixed fact.

The mass of country rock claimed to have been cut by appellants, they sought to show by an expert especially acquainted with the formation of the country at and in the vicinity of the property in question, that what the respondent calls the "Salmon" lode is no lode at all, but

is the general and universal formation of the country rock as it runs in that direction. See Record, pp. 104, 105, 109, int. 39.

Besides, under the instructions given at the request of counsel for respondent, and the evidence in the case, the jury might well find a lode, in the sense used in the instruction, two miles instead of one-quarter of a mile in width.

The respondent had testified to his possession of the *locus in quo;* it was a question submitted to the jury, and upon which instructions were given; and upon which counsel now claims that there is a finding in his favor.

As will be seen from the record, p. 116, appellants were not permitted to use in evidence the complaint sworn to by respondent, wherein he states that the appellants were in possession, and charges in direct terms a disseizin. This was a link in the chain of evidence.

As all the testimony went to show that, at and from that date, appellants' possession was unchanged, it was competent as an admission.

For a full and thorough presentation of the errors assigned, in the rejection and admission of evidence on the trial, other than those referred to, we respectfully submit to the attention of the court the latter portion of the original brief on file, prepared by Mr. Robinson while of counsel for appellants in this case.

As counsel for respondent take issue upon those questions by a general denial of error, we leave them as they stand, for the consideration of the court.

In discussing the errors assigned, in giving the volume of instructions, offered by respondents, we are very much at a loss to know where or how to begin.

We earnestly protest against the whole theory announced in them, as tending to mystify the real issue in the case and mislead the jury. They are altogether too broad and uncertain in the definition of a lode and lode matters, as contemplated by the statute, and seem to have

been intended to uphold some of the visionary theories of the witness upon the stand for the plaintiff, so as to comprise the entire formation of the country from the primitive granite on the east to the primitive granite on the west.

Taking these instructions as a body, we assert that the jury would be justified in finding that a quarry of limestone, granite, or anything else within the bowels of the earth, would satisfy the demands of the law under a location of a gold or silver ledge, *i. e.*, any material that is incapable of supporting animal or vegetable life, is all that is required.

The jury were told that if the zone or section of country claimed by respondent was mineral in its character, he was entitled to recover so far as that question was concerned, and that "mineral was anything that was incapable of supporting either animal or vegetable life." As a sample, see instructions contained on pp. 152, 153, of record, Nos. 26-7.

It will be conceded that instructions which tend to mislead the jury present good grounds for a reversal of the case.

The twenty-eighth instruction is equally obnoxious, for a like reason. We insist upon the objections specifically pointed out in bill of exceptions in record, p. —, and shall not attempt further here to discuss them.

In conclusion, we respectfully submit that the rejection of the evidence of the *actual possession* of the *locus in quo* by appellants, prior to respondent's purchase, prior to the alleged trespass, and up to and at the time of the institution of this action, present errors that cannot be frittered away without invading legal principle and doing violence to private right. 1. Because the evidence tends to show a "disseizin" of respondent with respect to the *locus in quo*, and thereby affecting his right of recovery in the action. 2. Because it tended to establish an adverse possession in appellants under a

*bona fide* claim of title, and was an element of title.
3. Because it tended to establish a title by adverse pos-
session, and was competent for all three of these pur-
poses.

In this we contend there was certainly error. If so,
the case should be reversed, aside from the various other
questions discussed by counsel for the respective parties.

There is much in the transcript of this case that tends
to incumber the record and is of no consequence to either
party, as no question is made as to the sufficiency of the
evidence and no motion for a new trial was made. All
that we conceive material in the determination of the
points presented will be found on the first 178 pages, and
401 to 410, inclusive, of the record. These, we believe,
will include all the questions involved, embracing the
claim and the objections to it, as well as the insufficiency
of the verdict and findings to support it.

HIRAM KNOWLES, THOS. L. NAPTON and SANDERS &
CULLEN, for respondents.

It is true that, upon information and belief, defend-
ants deny plaintiff's possession of the Salmon and Cliff
Extension No. 2 mine. It is not true that defendants
anywhere set up title or possession, or right of possession,
of the same. For verification of this, see page 8 of
transcript, wherein defendants deny that they, either by
themselves or in connection with any one else, entered
into the possession of the Salmon and Cliff-Extension
No. 2 mine. To the same effect is the answer of Merill
and Schnepple. See page 15 of transcript. By reference
to page 10 of transcript, it will be seen that defendants
claim that they own the Scratch-All and Shark Town
lodes. That the said Shark Town lies east and adjoining
the Salmon and Cliff-Extension lodes, and that the
Scratch-All lies and extends across the said Salmon and
Cliff lodes at nearly right angles. But they aver that
they have never worked or mined within the limits or

boundaries of the said Salmon and Cliff mine or any part thereof. To defendants' answer to plaintiff's supplemental complaint, defendants set up that they located and have been in possession of the ground in controversy. This answer cuts very little figure, however, in the case, as the supplemental complaint was only set forth with a view of affecting the equitable relief asked by plaintiff. It should be observed, however, that in no answer by any of the defendants is it set forth that they have been in possession of any portion of the said Salmon and Cliff mine. On the other hand, it is always alleged that they have been working a different lode, namely, the Scratch-All or the Shark Town. In plaintiff's replication, he admits that defendants have never worked within the external boundaries of the Salmon and Cliff mine, but avers that they have worked upon the same beneath the surface. See page 25 of transcript. This shows what the controversy was. The plaintiffs claimed that the defendants were on the Salmon and Cliff mine. Defendants denied this, but averred that they were on the Scratch-All or Shark Town lode. The question presented was identity of lodes. On page 275 of transcript, from the evidence of Harry Showers, it will be seen that the shaft of Murray and Durfee was outside of the Salmon lines. See, to same effect, evidence of Pardee, page 247 of transcript, and of Foote, page 201 of transcript. This shaft was east of the Salmon and Cliff. See evidence of Showers, page 276 of transcript. All of the evidence as to the location of the *locus in quo* shows this. The dip of the Salmon is about forty-five degrees east. See evidence, pages 208, 209, 226, 285 of transcript. This was the state of the case. The defendants went outside of the side lines of the said Salmon and Cliff to the east, and sunk a perpendicular shaft. The jury found that this shaft entered the Salmon and Cliff mine, and that the works thereupon were in it. See pages 401 and 404 of transcript. The finding of a general verdict for plaintiff

found this. That was the issue presented in the pleadings. As the jury found this as a matter of fact, it cannot be reviewed now in this case as presented.

The defendants, however, now turn around and say: "Admit we were upon the Salmon and Cliff vein; we had been there so long that the statute of limitations had run against plaintiff." There is no pretense by the defendants in their pleadings or in their evidence that they were ever in the possession of any of the external surface ground of the Salmon and Cliff. They must admit, then, if they have been in possession of the Salmon and Cliff lode, they acquired this possession by digging subterraneously into the same. And the question is presented to the court, can a person acquire possession of a vein by digging into it subterraneously?

The first question would be, what does he acquire possession of? Just to the extent of the excavations he may make in the same? This is changing as he advances in his burrowing daily. How would such a possession be described in an action of ejectment? What would be its metes and bounds? Such a possession has no legal subdivisions. The plaintiff was in possession of this ground at the surface. There is no doubt about this. The jury found he was in possession. See page 404 of transcript. All of the evidence shows this. Possession of land is *prima facie* evidence of ownership. *Doran* v. *C. P. R. R. Co.* 24 Cal. 245; *Grover* v. *Hawley*, 5 Cal. 485; *Crandle* v. *Woods*, 8 Cal. 136. The rule of the common law was that he who owns the surface owns to the heavens above and the depths beneath. Blackstone's Com. vol. 1, book 2, p. 18; Washburn on Real Estate, vol. 1, p. 3.

Under our mining law the title and right of possession follows a vein on its dip downward to the depths below. See sec. 2322, R. S. U. S. See the patent in evidence in this case, pp. 191–2 of transcript.

It is claimed that Pardee's possession was only a naked

possession. This is not true. He was placed in posses-
sion by Holland and Estell, the owners of the lode. See
evidence of Pardee, p. 237 of transcript; Evidence of
Holland, p. 235 of transcript; Evidence of Estell, p. 226
of transcript. Thus he became the tenant of Holland
and Estell. 1 Washb. on Real Prop. sec. 26, p. 591; *Yel-
low Jacket Co.* v. *Stevens*, 5 Nev. 184, marg. p. 232;
Kent's Com. vol. 4, 111; Wait's Act. & Def. vol. 4,
188–205; Wait's Act. & Def. vol. 3, p. 48, and cases cited;
*Clark* v. *Minnis*, 50 Cal. 508; *Leamond* v. *Hudson*, 60
N. Y. 102.

The fact that no rent was specified makes no difference.
*Hunt* v. *Comstock*, 15 Wend. 665. The plaintiff's posses-
sion was that of his lessors. *Mecham* v. *McKay*, 37 Cal.
155. And for the time he held the relation of tenant he
was to that extent the owner of the premises. 1 Washb.
on Real Prop. 436–7. He can justify under whatever
title his grantors may have. He is like any other
grantee; he traces his rights and title to the source from
whence they came. This is a familiar rule. A grantee
is not confined to his own deed, but can trace title back to
its source. For this purpose the introduction in evidence
of the patent to Holland and Estell was proper. It
showed that the title of Holland and Estell was a patent
from the United States, the paramount source of all titles
to mines, and this shows the character of plaintiff's pos-
session. It was backed by a government title. This be-
came material when the defendants claim by adverse
possession. They have invoked the aid of the provisions
of the statute of limitations as provided in chapter 80 of
the Codified Laws of 1871–2, p. 595.

*First.* This statute applies only to mining claims. The
language used, to which the law applies, is mining claims.
A mining claim is the right or title persons acquire by
location. *Hale & Norcross Gold & S. M. Co.* v. *Story
et al.* 1 Nev. 104; *State of Nevada* v. *Real Del Monte G.
& S. M. Co.* 1 Nev. 524. The plaintiff, having the right

to trace back his rights to that of his grantors, Holland and Estell, had a very different title to that acquired by location. The only time when the statute of limitations could have run was between the years 1875 and 1877. The statute invoked by defendants was repealed. See Laws of Montana of 1877, p. 215, sec. 674, and p. 48, sec. 40. This is a lode claim. In this last act, lode claims are excepted.

During this time Holland and Estell held the ground by virtue of an equitable title from the government. From the patent on page 182 of transcript, it will be seen that Holland and Estell entered and paid for said mine on the 24th day of April, A. D. 1873. This gave them at least an equitable title. As far as the government was concerned they were in the same position as though they had a patent. *Barney* v. *Dolph*, 97 U. S. 656; *Simmons* v. *Wagner*, 101 U. S. 261.

When the patent issued to them, it related back to the date when the equitable right accrued. *Stark* v. *Starrs*, 6 Wall. 418; *Wirth* v. *Branson*, 98 U. S. 121.

The right that Holland and Estell had was a very different right from that which a locator of mining ground holds. But if the statute could be construed to apply to such a right as that of Holland and Estell, then it was void in that particular. The legislative authority of the territory cannot interfere with the primary disposal of the soil. Organic Act of Montana, sec. 6.

Such a statute as this would have that bearing. See *Gibson* v. *Choteau*, 13 Wall. 92; *Schnefleton* v. *Nelson*, 2 Sawyer, 540.

But if it did in terms apply to such a title, the possession of defendants was not sufficient to set the statute of limitations in motion. To constitute adverse possession, the occupation must be open, visible, notorious and exclusive under a claim of right to hold the land against him who was seized, and the person against whom it is held must have knowledge or the means of knowledge

of such occupation. A clandestine entry or possession will not set the statute in motion. *Thompson* v. *Pioche,* 44 Cal. 517.

How can it be said that defendants' occupation was open or visible, or notorious, when they went inside of the side lines of plaintiff, and dug subterraneously into the Salmon and Cliff mine? How can it be said to be exclusive when the grantors of plaintiff were in possession of the surface, if not actually all the time, still all the time by virtue of their title? How can the defendants claim that they held the Salmon and Cliff ground under a claim of right, when they all the time denied that they were on this ground; and under the circumstances, how could it be against him who was seized? Did Holland and Estell have knowledge, or the means of knowledge, that defendants were on their mine? The works of Holland and Estell and those of Murray and Durfee were not joined or connected until after Pardee obtained possession of the same. See evidence of Showers, pp. 270 and 271 of transcript; also p. 227 of transcript. How could they have any means of knowledge positively that Murray and Durfee were on the Salmon mine until this connection was made?

Again, was this not a clandestine entry? Defendants went outside of the side lines of plaintiff and dug into the property, and they all the time claimed that they were on a separate lead, and not on the Salmon vein; that they were upon a cross-lead. If the defendants did not plead the statute of limitations; or if the evidence they offered was not competent to show that the defendants had been in adverse possession of the premises; or if the statute was void as far as it would have affected this case, then the numerous exceptions that defendants have taken upon this point must fall to the ground. Under plaintiff's possession he could maintain this action of trespass. 1 Washb. on Real

Prop. sec. 6584; 1 Chitty on Pl. 176; Cooley on Torts, 322; *Mining Co.* v. *Torbit,* 8 Otto.

Between plaintiff and defendants there was no privity of estate in any way. Defendants were strangers then. See Bouvier's Law Dictionary, title "Stranger;" Burrill's Law Dictionary, title "Stranger." To the extent of the term for which plaintiff held this property he was the owner. 1 Washb. on Real Prop. 535.

Even if this was not mining property, the mine being opened, he would have the right to mine the same. 1 Washb. on Real Prop. 467; *Freer* v. *Shotenbar,* 36 Barb. 641.

There was no error in the court refusing to allow defendants to prove the location of Scratch-All and Shark Town lodes. The only object in introducing this was to show that they were the owners of, and possessed of, these mines. This they allege in their answer. See p. 10 of transcript. The replication of plaintiff does not deny this. Hence it is admitted. See Statutes of 1877, p. 65, sec. 107.

It will be seen from a consideration of this trial that it was all the time conceded that defendants were the owners of the Scratch-All lode, if there was any, and the question for the jury was whether they were on this lode or the Salmon. And it was conceded that, if they were mining on either the Scratch-All lode or Shark Town lode, they were not trespassers. The only object the defendants could have had in attempting to show that they had been in possession of the Salmon mine would be to show that they had held the same adversely. If they had offered no evidence to show that the statute of limitations would apply, then there was no error in rejecting this. The defendants seems to claim some exemption from the ordinary rule that a man cannot acquire the possession of ground by going outside of the surface of the same, and digging into the same subterraneously, be-

·cause they sunk their shaft down from an adjoining claim perpendicularly and struck the Salmon on its dip. They do not claim that they ever entered upon the Salmon surface ground. By virtue of the Revised Statutes of the United States, sec. 2322, the owners of the Salmon mine had the right to the possession of all the surface included in their lines of location, and of all veins, lodes or ledges throughout their entire depth, the tops or apexes of which lie inside such surface lines, extending downward vertically, although such veins, lodes or ledges may so far depart from a perpendicular in their course downward as to extend outside the vertical side lines of such surface location. What difference is this right to that an owner of land has beneath his surface? Can it be that the plaintiff, although in possession of the surface of the Salmon mine, possessed nothing below the ·surface?

Again, as far as the surface ground that defendants claimed outside of the lines of the Salmon, the plaintiff or his grantors never made any claim to this; and how could they have brought an action against defendants to recover possession of any portion of the Salmon mine upon which the defendants entered? They could not describe such possession, if defendants had any, but as a hole in the ground. As to the surface outside of the ·Salmon they were in rightful possession, and, so far as their shaft extended before it struck the Salmon vein, they would be rightfully in possession of that.

The defendants further seek to recover on the theory that there was a cross-vein, namely, the Scratch-All, and that they were in possession of the surface of this, and hence in possession of it all the way down.

The question was asked the jury as to whether there was such a vein as the Scratch-All, running east and west. And the jury answer: "From the body of ore exposed westerly from the turn-table, there may be a Scratch-All, or a vein connecting closely with contact

vein from west." See page 403 of transcript. Now the works of defendants, when they were seeking to show possession, were east of the contact, and here the jury found no evidence of a cross-vein, and as to the one west they were simply uncertain. But admitting that there was a cross-vein, when it intersected with the Salmon it became in effect a part of the Salmon. See R. S. U. S. sec. 2336.

What is meant by priority of title shall govern? Why, he who holds the older title shall hold not alone the vein, but all the ground in the space of intersection, including the ore in the cross-vein. It cannot be that all the prior locator gets is the ore of the cross-vein in the intersection, and that the subsequent locator gets any of the ground in the space of intersection. The last clause shows that this could not have been the intention, for the subsequent locator gets only the right of way through the ground of the prior locator. But there is another consideration. If the Scratch-All was a cross-vein, then, as far as it lay within the lines of the Salmon, was not the plaintiff possessed of it at the surface, and was not the entering upon it an invasion of this possession?

Again, if there was a cross-vein known as the Scratch-All, then outside of the surface ground of the Salmon the defendants had the right to work and possess the same down until it struck the Salmon vein; and if possession of their vein from the surface down gave adverse possession, then plaintiff would be powerless. He could bring no action to eject him from his surface possession, and it would be only a question of time when this adverse possession would ripen into title.

The appellants aver that it devolved upon plaintiff to prove there was no cross-vein. That would be requiring him to prove a negative. That all that should be required of defendants would be to allege they claimed by virtue of a cross-vein, and it would devolve upon the plaintiff to disprove this. He who alleges a fact must prove it.

If defendants claim by virtue of a cross-vein, they should prove it. It is the foundation of the right they claim.

What possible legal presumption could arise from showing that all the veins in that mining district ran in a different direction from that of the Salmon? It is a well-known fact that all the veins in a district do not run in the same direction. A majority may, but not all. If all the veins in a district ran one way, when would arise the rules as to cross-veins? The statutes themselves recognize the fact that there may be different directions to veins in the same locality. Suppose it should be proven that all the veins in a district ran one way but one, and here was a well-defined lead running at right angles with all the rest; would the fact that all the other veins ran the other way disprove this patent fact? Yet that is what defendants wished to do.

The court held correctly that defendants, before they could prove adverse possession of the Salmon, would have to prove that they had been in the possession of the same at the surface. This the defendants never proposed to prove, and hence the court refused to allow them to prove that they had acquired possession of the Salmon mine by burrowing into it clandestinely. He allowed them to introduce any evidence that would show they ever were on the Salmon mine.

Defendants were seeking to prove adverse possession. The fact that plaintiff may have admitted that at a certain time defendants had made a forcible entry upon the subterraneous part of the Salmon mine or any part of it would not show that they had held it for the requisite period.

Nor would the insertion in the declaration in such an action as forcible entry and unlawful detainer, of an averment that defendants, at a certain time, had taken forcible possession of the Salmon mine, go to show, as a matter of fact, that plaintiff was not in possession of said mine when he brought the action in this case. The

trespass alleged and the time when plaintiff was in possession was on the 9th day of August; the time when plaintiff alleges the forcible entry was the 18th day of August, nine days after the alleged trespass in this case.

There were no allegations of the answer showing that defendants had ever claimed any adverse possession of the Salmon mine, or that they were in possession of the same. They denied at all times that they were in the possession. This proof, then, did not support any of the allegations of the answer. They wished to prove by an admission of plaintiffs what in their answer they had denied as the fact.

The court committed no error in allowing plaintiff to prove the judgment, etc., and appointment of receiver in the case of *Schneple* v. *Murray and Durfee.* Schneple denied that he had entered the Salmon mine. It was proven that Merill had. He was a receiver in that case, and the object was to connect him with Merill, the same that a plaintiff in an action in which an attachment is issued may be connected with the officer who serves the writ.

As to the point that the court would not let the defendants prove that they were in possession of the Salmon mine, the answer is that it is not true. The court never at any time refused to allow defendants to prove this. The dispute here was this: The defendants claimed that they could acquire the possession of the property by digging into it subterraneously without having the possession of the surface, when plaintiff's grantors were in possession thereof. The court held otherwise. If the defendants could acquire the possession of real property in this way, then the court committed error; if not, then the court was correct. And if this court should entertain for a moment the notion that upon this point the court below committed error, then I would like to know of what they gained possession; of what portion of the mine did they gain possession? the whole mine? Did

they oust the possessor on the surface in this way? Did they have the possession of the whole mine below their levels? How can this be? If the plaintiff does not have possession of the whole mine by being possessed of it at the surface, then the defendants can have no possession of the mine farther than they have entered their works.

It is not controverted that the plaintiff could not maintain this action if he was not in possession of the property. The jury have found that he was. And he certainly was, unless possession of property can be obtained by subterraneous digging into real property. The defendants do not pretend that they were in possession of any of the surface of the Salmon mine, yet, because they had dug into the mine subterraneously, that therefore they were in possession of the same, and the plaintiff could not bring this action because he was not in possession of the same. Yet there was no dispute but that the plaintiff was in the actual possession at the surface when this suit was commenced, when the evidence is viewed. This would present a peculiar phase, with the view of defendants. The subterraneous possessor would have in fact ousted the surface possessor, and left him no possession at all that could be protected in a court.

The court did not err in excluding evidence as to the location of the Scratch-All mine, or as to its existence, for this reason: The question was whether or not defendants were working on the Salmon mine. If they were not working on the Salmon mine, it did not make any difference where they were working, whether on the Scratch-All, Shark Town, or Jack Rabbit. Plaintiff claimed possession of nothing but the Salmon and Cliff Extension mine; claimed only that defendants had entered this. It made no difference where else, as far as this action was concerned, defendants had entered or worked.

The court did not err in sustaining plaintiff's objec-

tion to the question in plaintiff's twenty-fourth exception.

1st. There was no allegation that defendants had been in possession of ground for five years before the commencement of the action. If the object was to prove the running of the statute of limitations, then the question covered too much ground. It was not from the time of the commencement of the action, but from the time of the asking of the question.

2d. The question pertained to a portion of the mine *below* the surface, and *not* the surface.

3d. The statute of limitations was not pleaded, and if it was, did not apply. The court properly excluded the evidence sought to be introduced in the twenty-ninth, thirtieth, thirty-first, thirty-second and thirty-third exceptions, for reasons heretofore stated. It made no difference how many cross-leads there were in the district. Were the defendants working on the Salmon lode? was the question.

The point presented upon defendants' thirty-fifth exception has heretofore been presented, and the court did not err.

The court did not err in not permitting Murray to answer the questions in defendants' thirty-ninth and fortieth exceptions. Questions were leading.

The court did not err in not permitting defendants to prove matters contained in their forty-first, forty-second and forty-third exceptions. It made no difference as to what they did, as to staking the Scratch-All lode, or in locating the same.

The court did not err in excluding the testimony offered, and as contained in the forty-fourth exception or in their forty-fifth exception. No estoppel was pleaded. This was the only object of introducing this evidence.

The court did not err in not permitting defendants' witness, Clark, to answer the question contained in their forty-sixth exception. The question was leading and

was otherwise objectionable. If he had answered "No," he would have expressed an opinion against a known fact.

The court did not err in refusing to allow defendants to introduce in evidence the sworn complaint of plaintiff in justice's court, for reasons already stated.

The court did not err in not permitting defendants to prove the matter sought to be proved, as contained in their fifty-third exception. Court had a right to know the object of the testimony.

The court did not err in giving that part of plaintiff's fifth instruction beginning on line 10, p. 143. This is the rule expressed in the case of *Mining Co.* v. *Torbit,* 8 Otto, 463.

The court did not err in giving plaintiff's tenth instruction. The court takes judicial notice of the facts established by science. See Statutes of Mont. 1879, title "Evidence," sec. 625; Wharton on Ev. secs. 333–336; Greenleaf on Ev. sec. 6, notes 5 and 6.

The court did not err in giving plaintiff's fifteenth instruction. It does not tell the jury to discard expert testimony. It only instructs the jury as to their province in weighing it.

We do not think it is necessary to discuss the other points made by appellants in their brief. In the main, they do not, in our judgment, present facts. It is always difficult to discuss a proposition affirmed positively as true, when no reason is assigned and no authority is invoked to sustain it. If an instruction is misleading, it should be shown how it was misleading.

As to the instructions refused, asked by defendants, we assert that they were properly refused. There was no issue of adverse possession in this case. In the first place, adverse possession was nowhere correctly pleaded. And in the second place, the statute of limitations evoked in this case by defendants did not apply, as we have shown before.

The adverse possession pleaded in the answer to plaintiff's supplemental complaint does not state that they had been in the adverse possession of any of the ground described in said supplemental complaint, but only of the ground in controversy, and this is not described. This is not the kind of a pleading that will show adverse possession. Abbott's Trial Ev. 715; 2 Greenl. Ev. sec. 430.

WADE, C. J. This controversy, as shown by the pleadings and testimony, arose over the identity of certain quartz lodes, the plaintiff claiming the possession of the Salmon and Cliff Extension lode claims, situate near Phillipsburg, Deer Lodge county, he being the lessee of Holland and Estell, who purchased the claims in 1873, and after the commencement of this action received a government patent therefor; and the defendants basing their right upon their location and possession of the Shark Town and Scratch-All claims. The answer of defendants denies the possession of plaintiff, but the testimony conclusively shows, and without question or dispute, so far as the same appears in the transcript, that the plaintiff, at the time of the grievances complained of, was, and that for a long time prior thereto his lessors had been, in possession of the surface ground of the Salmon and Cliff lode claims. The answer also denies that the defendants ever entered upon the Salmon and Cliff claims, or that they ever mined within the limits thereof, and avers that ever since the 9th day of February, 1875, they have been in possession of and working the Shark Town and Scratch-All claims, and therefore alleges that plaintiff's action is barred by the statute of limitations of February 9, 1865, and January 11, 1872.

The replication of plaintiff admits the location of the Shark Town and Scratch-All claims, but alleges that the defendants, since the 9th day of February, 1875, have been working on the Salmon and Cliff Extension. The location of the Shark Town and Scratch-All claims was

not in question. There was no controversy concerning them and could have been none. Their location was admitted in the pleadings, and any testimony concerning such location was properly excluded from the evidence.

This seems to be the state of facts in the case. The defendants entered upon their own grounds, and outside the surface boundaries of the plaintiff's claim, and sunk a perpendicular shaft and struck a vein of quartz beneath the surface; and the question at issue was whether this vein belonged to, and formed a part of, the Salmon and Cliff Extension lode, and upon this issue the jury found for the plaintiff, and that it did. Upon this issue, testimony as to when defendants commenced upon their claims, or under what claim of title, or how much money they had expended thereon, or when they first commenced work, was wholly immaterial after the admission in the pleadings of the location of their claims. Nor would it have been competent to have proved the declarations of Holland and Estell, lessors of plaintiff, as to the extent or limits of the Salmon and Cliff vein, providing the extent and limits of the same, at the time they made any declarations, because of want of development, were entirely unknown. Such declarations at such a time could have been nothing more than mere speculation, and wholly incompetent for the purpose for which they were offered. Neither would the opinion of the respondent in 1876 as to the location of the Scratch-All claim, or the opinion of any witness as to the dip or direction of the ore in any other veins, make any difference.

The possession of the respondent was sufficient to maintain this action. He had possession of the surface ground, and such possession gave him possession of all veins, lodes and ledges throughout their entire depth, the tops or apexes of which lie inside of the surface lines extended downward vertically, although such veins, lodes or ledges may so far depart from a perpendicular in their

course downward as to extend outside the vertical side lines of the surface location.  U. S. R. S. sec. 2320.

Possession of the surface of a mining claim location is possession of all veins, lodes and ledges, the tops or apexes of which are inside the surface lines, although such veins, lodes and ledges, as they go downward, may extend outside such surface lines; and possession of the surface ground protects such veins, lodes and ledges from the. operation of the statute of limitation.   Therefore, before the defendants could set up any adverse claim to the Salmon and Cliff Extension vein, they ought to have shown that they were in possession of the same at the surface.  No adverse possession could become operative by going outside of its boundaries and sinking a shaft upon what they claimed as another location, and striking the Salmon and Cliff Extension vein on its dip, and outside of its surface lines, no matter how long continued, if unknown to the respondent and his lessors.  In such a case the statute would begin to run only from the time it became known to the Salmon and Cliff owners, their predecessors or assignees, that the defendants had entered into the possession of the vein under ground and outside of its surface boundaries.  Such owners would have no right to enter upon the defendants' ground or into their shaft or works, and, therefore, no means of knowing the extent of the defendants' possession, or what titles they might be claiming by virtue thereof.   Adverse possession, in order to ripen into a title, must be open, notorious, and under a claim of right.   The defendants set up no claim to the Salmon and Cliff Extension. They deny that they ever worked upon the same.   They claim title by virtue of the Sharktown and the Scratch-All locations, and allege that all their work was done upon such locations.   They therefore can claim nothing by virtue of adverse possession of the Salmon and Cliff Extension.   They declare that they held no such possession and claim no interest in that vein.   Under these

averments in their answers they can claim nothing by adverse possession. Their pleading must not be contradictory or inconsistent. Their testimony must not contradict their averments. After having denied in their answers that they ever had possession of the Salmon and Cliff Extension lode, it was no error for the court to refuse to admit testimony in their behalf that they had taken forcible possession thereof.

If, under the state of circumstances disclosed in this case, the defendants might have availed themselves of the statute of limitation, they have not so pleaded the same as to become entitled to the benefits thereof. They claim under the statutes of February, 1865, and January, 1872, which were repealed by the act of February 16, 1877.

The defendants also claim by virtue of a cross-vein. All competent testimony on this issue seems to have been fairly submitted to the jury. In such a case, priority of title governs, and the prior location is entitled to all the ore or mineral contained within the space of intersection, but the subsequent location has the right of way through the space of intersection for the purpose of the convenient working of the mine. U. S. R. S. sec. 2336.

If a vein with a prior location crossed another, such vein would not disturb the possession of the subsequent location, except as to the extent of the cross-vein, and would entitle the prior location to the ore and mineral contained in the space of intersection. If with a subsequent location, the locator would be entitled only to a right of way to the extent of his cross-vein, for the purpose of working his mine, and to no other right; and if he should take the ore contained in the space of intersection he would be a trespasser, against whom the prior locator in possession of the surface ground might maintain an action of trespass.

The judgment is affirmed, with costs.

*Judgment affirmed.*